## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ERIC L. BOLTON**                                    **CIVIL ACTION**

**versus**                                           **NO. 13-4572**

**N. BURL CAIN, WARDEN**                             **SECTION: "I" (3)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Eric L. Bolton, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.  On June 23, 2010, he was convicted of attempted manslaughter,

second degree robbery, and second degree kidnapping under Louisiana law.[1]  On August 2, 2010, he pleaded guilty to being a fourth offender, and he was sentenced as such on the attempted manslaughter conviction to a term of life imprisonment without benefit of probation, parole, or suspension of sentence.  On that same date, he was also sentenced to terms of forty years imprisonment on each of the two remaining convictions.  It was ordered that all of the sentences be served concurrently.[2]  On September 14, 2011, the Louisiana First Circuit Court of Appeal affirmed his convictions, habitual offender adjudication, and sentences.[3]  The Louisiana Supreme Court then denied his related writ application on February 10, 2012.[4]

On or about March 12, 2012, petitioner filed an application for post-conviction relief with the state district court.[5]  That application was denied on July 25, 2012.[6]  His related writ

---

[1] State Rec., Vol. III of VI, trial transcript, p. 633; State Rec., Vol. I of VI, minute entry dated June 23, 2010; State Rec., Vol. I of VI, jury verdict forms.

[2] State Rec., Vol. III of VI, transcript of August 2, 2010; State Rec., Vol. I of VI, minute entry dated August 2, 2010.

[3] State v. Bolton, No. 2011 KA 0329, 2011 WL 4448170 (La. App. 1st Cir. Sept. 14, 2011); State Rec., Vol. IV of VI.

[4] State v. Bolton, 80 So.3d 470 (La. 2012) (No. 2011-KO-2061); State Rec., Vol. IV of VI.

[5] State Rec., Vol. IV of VI.

[6] State Rec., Vol. IV of VI, Judgment dated July 25, 2012.

applications were likewise denied by the Louisiana First Circuit Court of Appeal on November 21, 2012,[7] and by the Louisiana Supreme Court on May 3, 2013.[8]

On or about May 28, 2013, petitioner filed the instant federal application for *habeas corpus* relief.[9]  The state concedes that the application is timely.[10]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application

---

[7] State v. Bolton, No. 2012 KW 1433 (La. App. 1st Cir. Nov. 21, 2012); State Rec., Vol. IV of VI.

[8] State *ex rel.* Bolton v. State, 113 So.3d 211 (La. 2013) (No. 2012-KH-2606); State Rec., Vol. IV of VI.

[9] Rec. Doc. 1.

[10] Rec. Doc. 14, p. 3.

for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

> [A] state-court decision can involve an "unreasonable application" of
> this Court's clearly established precedent in two ways.   First, a
> state-court decision involves an unreasonable application of this
> Court's precedent if the state court identifies the correct governing
> legal rule from this Court's cases but unreasonably applies it to the
> facts of the particular state prisoner's case.   Second, a state-court
> decision also involves an unreasonable application of this Court's
> precedent if the state court either unreasonably extends a legal
> principle from our precedent to a new context where it should not
> apply or unreasonably refuses to extend that principle to a new
> context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000).   The Supreme Court has noted that the focus of this

inquiry "is on whether the state court's application of clearly established federal law is objectively

unreasonable, and we stressed in Williams that an unreasonable application is different from an

incorrect one."   Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011)

("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of

the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."), cert.

denied, 132 S.Ct. 1537 (2012).

While the AEDPA standards of review are strict and narrow, they are purposely so.

As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary
> conclusion was unreasonable.
> If this standard is difficult to meet, that is because it was
> meant to be.   As amended by AEDPA, § 2254(d) stops short of
> imposing a complete bar on federal court relitigation of claims
> already rejected in state proceedings.   It preserves authority to issue
> the writ in cases where there is *no possibility* fairminded jurists could
> disagree that the state court's decision conflicts with this Court's
> precedents.   It goes no farther.   Section 2254(d) reflects the view that
> habeas corpus is a guard against *extreme malfunctions* in the state
> criminal justice systems, *not a substitute for ordinary error
> correction through appeal*.   *As a condition for obtaining habeas*

- 5 -

> *corpus from a federal court, a state prisoner must show that the state*
> *court's ruling on the claim being presented in federal court was so*
> *lacking in justification that there was an error well understood and*
> *comprehended in existing law beyond any possibility for fairminded*
> *disagreement.*

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 558 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from

using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state

courts.").

## II. Facts

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts

of this case as follows:

> Sometime in 2009, Louise Mayeaux befriended the defendant
> after meeting him in a church prayer group in Avoyelles Parish where
> she was a guest speaker.  They spoke on the telephone regularly.
> From conversations with the defendant, Ms. Mayeaux believed that
> he was at times homeless and unemployed.  At some point, the
> defendant asked her for financial assistance, and she attempted to
> help him on numerous occasions over a period of months because she
> believed it was her Christian duty.  On one occasion, she enlisted the
> aid of her daughter and son-in-law, Melissa and Kevin Deterres, to
> provide a deposit and two months rent for a trailer for the defendant
> to live in.  When the defendant lost occupancy of the trailer after
> several months, Ms. Mayeaux allowed him to stay at her home in
> Simmesport, Louisiana for a brief period of time.  On other occasions
> when the defendant obtained employment working offshore, Ms.
> Mayeaux drove him to his pickup location.  At some point in
> November 2009, Ms. Mayeaux and the Deterreses decided to give the
> defendant a used vehicle, because they believed his lack of
> transportation hindered his ability to maintain steady employment.
> In exchange, the defendant was to perform odd jobs around the
> Deterreses' home in Mandeville, Louisiana.
> In addition to performing this work, the defendant was also
> invited to join the family for Thanksgiving Day.  Accordingly, Ms.

Mayeaux and the defendant left Simmesport on November 12, 2009, intending to travel to a part-time residence Ms. Mayeaux maintained in Covington, Louisiana.  Ms. Mayeaux was to spend the weekend there, before returning to work in Simmesport.  The defendant was to remain at Ms. Mayeaux's Covington house while he was performing the work for the Deterreses.  However, en route to Covington, the defendant requested that Ms. Mayeaux drop him off at a friend's house in Baton Rouge.  It was understood that he would later find his own way to her house in Covington.

At approximately 11:00 to 11:30 p.m. that evening, the defendant telephoned Ms. Mayeaux and requested that she pick him up from a restaurant in Hammond, which she agreed to do.  As they were arriving back at the Covington residence sometime after midnight, Ms. Mayeaux told the defendant that her ex-husband was upset about the family inviting the defendant over for Thanksgiving Day.  Her ex-husband was concerned that they did not know anything about the defendant and that he might steal from or harm them.  The defendant merely responded, "Is that so?"

However, upon walking through the door into the house, Ms. Mayeaux felt a hard blow to her face and fell to the floor.  The defendant stood over her, telling her not to move or talk.  He struck her again and she "blacked out" for a time.  After she regained consciousness lying in a pool of blood, she requested medical assistance to no avail.  The defendant told her that he was going to kill her and then kill himself.  He pulled a small vial from his pocket, told her it was for crack cocaine, and that he was an addict who was unable to overcome his addiction.  At one point, the defendant grabbed her from behind and twisted her neck back and forth as though he was trying to break it.

Ms. Mayeaux continued talking to the defendant, pleading with him not to kill her.  Ultimately, he told her that he would tie her up instead so that he would have time to escape.  He then tied her legs together and her arms behind her back using a telephone cord and the cord from an electric iron.  Before leaving, the defendant took money from Ms. Mayeaux's wallet and demanded the keys to her car.  She asked him not to take her car as it was her only means of transportation.  He told her that he would leave the car on North Rampart Street in New Orleans and that he would call 911 for her when he got there.

After the defendant left, a substantial period of time elapsed before Ms. Mayeaux freed herself.  The first thing she did was attempt to call the defendant on his cellular phone, but he did not

answer.  She explained that she wanted to ask the defendant "not to kill himself because I knew his soul was important to God...."  At approximately 4:00 a.m., she called the Deterreses' house and told her son-in-law that the defendant had attacked her.  He responded by calling 911.

Ms. Mayeaux was initially taken to Lakeview Regional Medical Center where it was discovered that she had sustained serious facial trauma, two lacerations on her face requiring stitches, and "fairly significant" brain trauma that resulted in a blood clot on the outside of the brain.  As a result of the potentially life-threatening brain injury, she was transferred to Ochsner Hospital in New Orleans.  When she was released, she convalesced at her daughter's house for several weeks.  She was finally able to return to work sometime in January, 2010.

The defendant was apprehended in Baton Rouge several days after the attack.  Shortly thereafter, Ms. Mayeaux's car was recovered in the parking lot of a business located in Baton Rouge.[11]

### III.  Petitioner's Claims

### A. Denial of Right to Prepare and Present a Defense

Petitioner's first claim is that he was denied his right to prepare and present a defense.

On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

In his first and second pro se assignments of error, the defendant argues that the trial court abused its discretion in denying his motion for continuance, which he sought in order to allow time for returns to be made on several subpoenas duces tecum issued at his request.  The defendant asserts that the denial of the continuance prevented him from obtaining documents supporting his defense, thereby resulting in a deprivation of his constitutional rights to due process and compulsory process, as well as his right to prepare a defense.  In particular, the defendant notes that the subpoenas were issued only one week before trial, even though they allowed thirty days for a return to be made thereon.

---

[11] State v. Bolton, No. 2011 KA 0329, 2011 WL 4448170, at *1-3 (La. App. 1st Cir. Sept. 14, 2011); State Rec., Vol. IV of VI.

On May 6, 2010, the defendant filed five pro se motions requesting the issuance of subpoenas duces tecum seeking the following information: (1) a subpoena directed to Best Western Richmond Suites in Lake Charles, Louisiana requesting billing and registration information in Louise Mayeaux's name; (2) a subpoena directed to Offshore Services of Acadiana requesting employment records for the defendant; (3) a subpoena directed to the United States Postal Service requesting all records regarding a change of address form in the defendant's name; (4) a subpoena directed to Brouillette Water Works requesting billing and termination of service information for a Marksville, Louisiana address; and (5) a subpoena directed to the Holiday Inn in Baton Rouge, Louisiana requesting billing and registration information in the names of Louise Mayeaux and the defendant. At a pretrial conference held on June 4, 2010, defense counsel adopted the pro se motions for issuance of the subpoenas. However, it was not until June 14, 2010 that the subpoenas, each allowing thirty days for a return, were actually signed by the trial judge and issued. The next day defense counsel filed a motion to continue the scheduled June 21, 2010 trial date, alleging that the delayed issuance of the subpoenas prevented the defense from obtaining crucial documents in time for trial.

At the beginning of trial, the trial court conducted a hearing on the motion to continue. Defense counsel stated that he had assumed the subpoenas had gone out weeks earlier, and had only learned otherwise during the previous week. Therefore, he argued that additional time was needed to obtain the information sought in the subpoenas, which he claimed was critical for cross-examination and impeachment purposes. Specifically, he argued that the hotel information would support the defendant's claim that Ms. Mayeaux was lying when she denied her romantic relationship with the defendant and that they had spent nights together in hotels. He further asserted that the change of address information would support the defendant's claim that he was planning to move in with Ms. Mayeaux. According to defense counsel, the information from the water company and the defendant's former employer would further weaken Ms. Mayeaux's credibility by showing that she lied about the defendant being homeless and unemployed.

When the trial court inquired at the hearing as to whether defense counsel had made any efforts to obtain the information independent of the subpoenas, defense counsel indicated that he had not done so. Thereafter, the trial court denied the continuance on the basis that: (1) it believed the subpoenas were frivolous because the

information sought had "little or no evidentiary value," and (2) defense counsel had made no independent efforts to obtain the information.  The trial court further observed that this matter had previously been continued and defense counsel, who was aware of its priority setting, had assured the court at the pretrial conference that the defense would be ready by the scheduled trial date.

Under LSA-C.Cr.P. art. 712, a timely filed motion for continuance "may be granted, in the discretion of the court, in any case if there is good ground therefor."  The decision whether to grant or refuse a motion for a continuance based on this provision rests within the sound discretion of the trial court, and a reviewing court will not disturb such a determination absent a clear abuse of discretion.  State v. Reeves, 2006-2419 (La. 5/5/09), 11 So.3d 1031, 1078-79, cert. denied, ___ U.S. ___, 130 S.Ct. 637, 175 L.Ed.2d 490 (2009).  Additionally, even when an abuse of discretion is shown, the denial of a motion for continuance generally is not reversible absent a showing of specific prejudice.  Reeves, 11 So.3d at 1079.

We find no error in the denial of the defendant's motion for continuance.  First, the defendant has not shown that the continuance was necessary in order to obtain the information sought.  At the time of the hearing on the motion to continue, the defendant had already received a return on the subpoena directed to the Best Western Richmond Suites in Lake Charles.  The defendant actually introduced a receipt from that hotel into evidence at trial in support of his contention that he was romantically involved with Ms. Mayeaux. Additionally, the prosecutor indicated that she was willing to stipulate to the fact that the defendant had changed his address to Ms. Mayeaux's residence, purportedly because the defendant had indicated to her that he had nowhere else to receive his mail.  The fact that defense counsel chose not to present evidence of this stipulation at trial does not alter the fact that it was available to him. See LSA-C.Cr.P. art. 710.  Moreover, during cross-examination of Ms. Mayeaux regarding her prior testimony that the defendant was homeless, defense counsel indicated that he had water bills dating back to August demonstrating that the defendant had his own residence.

Therefore, as of the time of trial, it appears that the only information sought by the subpoenas that the defendant had not already obtained was his employment records and registration/billing information from the Holiday Inn in Baton Rouge.  We agree with the trial court that defense counsel failed to establish that he was unable to obtain this information without subpoenas.  The fact that defense

counsel filed the motion for continuance on June 15, 2010, demonstrates that he had at least four workdays from the time that he discovered the delayed issuance of the subpoenas until trial. Despite his contention that the information was crucial, he made no attempt to obtain the information independently. Thus, the defendant failed to show that he was unable to obtain his personal employment records and hotel registration information (listed jointly in his name) by request.

Under the circumstances, the trial court did not abuse its sound discretion in denying the motion to continue. Further, even if an abuse of discretion did occur, the defendant failed to establish any specific prejudice he suffered as a result. Absent a showing of specific prejudice, the erroneous denial of a motion to continue is not reversible. See Reeves, 11 So.3d at 1079. These assignments of error are without merit.[12]

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[13]

For the following reasons, it is clear that the foregoing decision rejecting this claim was neither contrary to nor an unreasonable application of clearly established federal law.

As the United States Fifth Circuit Court of Appeals has explained:

A motion for continuance is addressed to the sound discretion of the trial court and will not be disturbed on a direct appeal unless there is a showing that there has been an abuse of that discretion. United States v. Uptain, 531 F.2d 1281 (5th Cir. 1976); United States v. Gidley, 527 F.2d 1345 (5th Cir. 1976), cert. denied, 429 U.S. 841, 97 S.Ct. 116, 50 L.Ed.2d 110 (1977). When a denial of a continuance forms a basis of a petition for a writ of habeas corpus, not only must there have been an abuse of discretion but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process. See Gandy v. Alabama, 569 F.2d 1318, 1323 (5th Cir. 1978); Shirley v. North Carolina, 528 F.2d 819, 822 (4th Cir. 1975).

---

[12] Bolton, 2011 WL 4448170, at *4-6; State Rec., Vol. IV of VI.

[13] State v. Bolton, 80 So.3d 470 (La. 2012) (No. 2011-KO-2061); State Rec., Vol. IV of VI.

The Supreme Court addressed this subject in <u>Ungar v. Sarafite</u>, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964):

> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. (Citations omitted.)

<u>Hicks v. Wainright</u>, 633 F.2d 1146, 1148-49 (5th Cir. 1981).

In the instant case, petitioner has not established even that the trial judge abused his discretion in denying the continuance, much less that the trial was rendered "fundamentally unfair" by the denial. As noted by the state courts, much of the evidence petitioner had sought in his *pro se* subpoenas was either procured in time for trial or ultimately unnecessary. As to the remaining evidence, counsel neither followed up on the subpoenas nor made any independent efforts to obtain that evidence, despite the fact that he had adequate time and opportunities to do so. Moreover, given that the evidence was not in and of itself exculpatory and did not directly concern the crimes, but instead concerned only the tangential issue of the victim's forthrightness about the underlying nature of her relationship with petitioner, the value of the evidence is speculative at best. Under these circumstances, this Court simply cannot say that the state court's decision denying petitioner's claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accordingly, under the stringently deferential standards of review mandated by the AEDPA, this Court should likewise deny the claim.

<u>B. Improper Admission of Hearsay Evidence</u>

Petitioner next claims that his rights were violated by the admission at trial of improper hearsay evidence. On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> In his third pro se assignment of error, the defendant asserts that the trial court erred by allowing prejudicial hearsay testimony into evidence.
>
> Detective Steven Chaisson of the St. Tammany Parish Sheriff's Office testified as a state witness. While being questioned by the prosecutor, defense counsel raised a hearsay objection to his testimony, as follows:
>
>> Q.  Okay. Now, did you get any information – I know they talked about putting [the defendant's] photo up in parishes almost all the way to Texas. Did you get any information from people from the photo BOLOs that went out? From anybody that knew him or had seen him?
>>
>> A.  Well, that morning, we got together and we sent news articles to all of the media outlets to get the car and the person put out there going west. A few days, I want to say, maybe Tuesday or Wednesday, I received a phone call from a lady in Lafayette, that said that she had met the defendant over there.
>>
>> [Defense counsel]:
>>
>>> I'm going to object, Your Honor. This is

- 13 -

hearsay. He's going to state what the lady said.

[Assistant District Attorney]:

She'll be here, too. She'll be here tomorrow morning.

The Court:

Overruled.

Q.      Now from talking to Ms., her name is Susan Holt.  Is that familiar?  From talking to her, did she identify the picture that you-all put up identified by the family?

A.      Yes, she did.

Q.      Do you recall, I know we talked about November 13th. Where did she last see him and how close to the date of Ms. Louise Mayeaux's attack?

A.      It was either the Tuesday or Wednesday before.

Q.      Thursday is –

A.      Thursday and then Friday morning.  So either Wednesday or Thursday, and she didn't know who he was.  She saw his picture on the news. She recognized him.  She didn't call us.  She went back to the Lafayette Police Department and **said the guy I filed a complaint against – They put him on the news.**

Q.      So that was the last place that she saw him would have been in Lafayette, or somewhere else?

A.      Yes.

Q.      Okay. Now, had she learned of any locations he may be going the last time she talked to him, whether it be Baton Rouge, or St. Tammany?

A.      No.

Q.      So with her information, he would have been in Lafayette about November 12th or November 11th?

A.      Yes.

[Emphasis added.]

Despite the prosecutor's assertion to the court, Ms. Holt was never called as a witness and, therefore, was not subject to cross-examination by defense counsel.  Nor did the state cite any hearsay exception to justify the admission of the testimony regarding the statement she made to Detective Chaisson.

A hearsay statement is a statement, other than one made by the declarant while testifying at the present trial or hearing, that is offered in evidence to prove the truth of the matter asserted. LSA-C.Cr.P. art. 801C.  Normally, hearsay is not admissible except as specifically provided by law.  See LSA-C.Cr.P. art. 802. However, under certain circumstances, a police officer's testimony may refer to statements made to him by others when these statements are admitted, not to prove the truth of the statements, but to explain the officer's actions or the sequence of events leading to the defendant's arrest.  State v. Watson, 449 So.2d 1321, 1328 (La. 1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985); State v. Veal, 583 So.2d 901, 903-06 (La.App. 1st Cir.1991). Nevertheless, although it may be relevant to explain his conduct, the fact that a police officer acted on information received in an out-of-court assertion should not be used as a passkey to bring before the jury the substance of the out-of-court information that would otherwise be barred by the hearsay rule.  State v. Hearold, 603 So.2d 731, 737 (La. 1992); State v. Wile, 559 So.2d 1321, 1331 (La. 1990), cert. denied, 506 U.S. 880, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992).

In the instant case, the steps taken in the police investigation were not an issue at trial. Further, Detective Chaisson did not testify as to any action he took in response to the information provided by Ms. Holt, which concerned events that occurred prior to the instant offenses. The information she provided to him was unnecessary to present an overview of the investigation or to describe the events leading to the defendant's arrest. In fact, the relevance of the information she provided was not clearly established. It appears that the disputed testimony may have been presented to establish the truth of the matters asserted therein, i.e., that the defendant was in Lafayette on November 11th or 12th and that Ms. Holt filed an unspecified complaint against him. As such, it constituted hearsay that should have been excluded. The trial court erred in overruling defense counsel's hearsay objection.

Nevertheless, the erroneous admission of the hearsay testimony does not require a reversal of the defendant's convictions because this error was harmless beyond a reasonable doubt. See LSA-C.Cr.P. art. 921; Wille, 559 So.2d at 1332. An error is considered to be harmless when the guilty verdict actually rendered in the trial was surely unattributable to the error. State v. Johnson, 94-1379 (La. 11/27/95), 664 So.2d 94, 100.

In the instant case, while the reference to a police complaint being filed against the defendant was potentially prejudicial, it was not unduly so. No details were given regarding the nature of the complaint, and the reference was brief. The disputed testimony neither implicated the defendant in the instant offenses nor placed him at the crime scene. Moreover, our review of the record indicates that the evidence presented by the state, particularly the medical evidence regarding Ms. Mayeaux's severe injuries, the photographs depicting her injuries, and her testimony identifying the defendant as the perpetrator of the offenses, was so strong that it overwhelmingly indicates that the guilty verdicts were correct and surely unattributable to the improper admission of the hearsay testimony. Accordingly, since no prejudice resulted to the defendant, the error was harmless beyond a reasonable doubt. This assignment of error is without merit.[14]

---

[14] Bolton, 2011 WL 4448170, at *6-8; State Rec., Vol. IV of VI.

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[15]

Here, the state courts found, and this Court agrees, that the comments at issue were hearsay inadmissible under state law.  However, federal *habeas* relief is not available to correct errors which violate solely state evidence law.[16]  Rather, federal *habeas corpus* relief may be granted "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

To the extent that petitioner is now arguing that the admission of the hearsay testimony also violated *federal* law, specifically the federal constitutional right to confront one's accusers, the state argues that the claim is unexhausted because petitioner did not bring a Confrontation Clause claim in the state courts.  However, this Court need not reach that issue, because it is clear that a federal court may pretermit a decision on exhaustion where the underlying claim fails on the merits.  28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Jones v. Jones, 163 F.3d 285, 299 (5th Cir. 1998); Woods v. Cain, Civ. Action No. 06-2032, 2008 WL 2067002, at *8 n.8 (E.D. La. May 13, 2008).  Because that is the case here, the undersigned recommends that, in the interest of judicial economy, the federal Confrontation Clause claim simply be denied as meritless for the following reasons.

---

[15] State v. Bolton, 80 So.3d 470 (La. 2012) (No. 2011-KO-2061); State Rec., Vol. IV of VI.

[16] A federal *habeas* court "does not sit to review the mere admissibility of evidence under state law."  Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998).

The United States Supreme Court has in recent years examined in detail the protections afforded by the federal Confrontation Clause.  The Supreme Court explained:

> The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."  In Crawford v. Washington, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), we held that this provision bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."  A critical portion of this holding ... is the phrase "testimonial statements."  Only statements of this sort cause the declarant to be a "witness" within the meaning of the Confrontation Clause. See id., at 51, 124 S.Ct. 1354.  It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.

Davis v. Washington, 547 U.S. 813, 821 (2006).  The Supreme Court continued:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.  They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

Id. at 822.

In the instant case, the statements at issue were clearly made after the emergency had passed and were obviously elicited for the purpose of establishing facts for a later criminal prosecution.  Therefore, they were testimonial in nature, and, as such, the admission of the statements of the non-testifying witness did in fact violate the Confrontation Clause.  Nevertheless,

- 18 -

for the following reasons, it is evident that relief is not warranted because the violation was ultimately harmless.

> The United States Fifth Circuit Court of Appeals has held:
>
>> [V]iolations of the Confrontation Clause are still subject to harmless error analysis. ... To determine whether the error was harmless, we consider the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and of course, the overall strength of the prosecution's case.

Hafdahl v. Johnson, 251 F.3d 528, 539-40 (5th Cir. 2001) (quotation marks omitted). The statements at issue here were limited and vague, largely irrelevant, did not directly concern the instant crimes, and did not appreciably enhance the strength of the case against petitioner. Therefore, the admission of those statements simply did not have "a substantial and injurious effect or influence in determining the jury's verdict." Taylor v. Cain, 545 F.3d 327, 336 (5th Cir. 2008). Accordingly, the trial court's error was harmless and does not warrant federal relief.

## C. Prosecutorial Misconduct

Petitioner next claims that the prosecutor engaged in misconduct. Specifically, he alleges that the prosecutor knowingly elicited false testimony at trial and improperly withheld evidence from the defense.

With respect to the former claim, that claim was denied by the district court in the state post-conviction proceedings. That court held:

> When a prosecutor allows a state's witness to give false testimony without a correction, a conviction gained as a result of that perjured testimony must be reversed, if the witness' testimony

reasonably could have affected the jury's verdict even though the testimony may be irrelevant to the credibility of the witness. Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959); State v. Broadway, 96-2659, p. 17 (La. 10/19/99), 753 So.2d 801, 814, cert. denied, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000). To prove a Napue claim, the accused must show that the prosecutor acted in collusion with the witness to facilitate false testimony. Broadway, 753 So.2d at 814.

        The Petitioner accuses the prosecutor of having information of a romantic relationship between the victim and the Petitioner from Petitioner's ex-girlfriend. He has no supporting evidence other than what he claims was a telephone conversation between the prosecutor and Petitioner's ex-girlfriend. He further accuses the victim of lying about the relationship and the prosecutor of knowing of the lie, and not disclosing that information.

        ... [T]he prosecutor conveyed in court that she had never discussed the nature of the relationship between the victim and the Petitioner. Since the questions were never asked there could be no collusion between the prosecutor and victim to elicit a lie. The Petitioner did have the opportunity to question the victim about the nature of their relationship. He offered receipts from the Best Western Hotel in Lake Charles as evidence of their relationship. The victim answered the questions regarding those receipts, denying any intimate relationship and the triers of fact had the opportunity to gage the credibility of the witness and made their decision. This claim is also without merit.[17]

Without additional reasons being assigned, petitioner's claim was likewise denied by the Louisiana First Circuit Court of Appeal[18] and by the Louisiana Supreme Court.[19]

---

[17] State Rec., Vol. IV of VI, Judgment dated July 25, 2012, at pp. 3-4.

[18] State v. Bolton, No. 2012 KW 1433 (La. App. 1st Cir. Nov. 21, 2012); State Rec., Vol. IV of VI.

[19] State ex rel. Bolton v. State, 113 So.3d 211 (La. 2013) (No. 2012-KH-2606); State Rec., Vol. IV of VI.

A claim of prosecutorial misconduct, including the use of false testimony, presents a mixed question of law and fact.  Harvey v. Cain, Civ. Action No. 13-2994, 2013 WL 6490484, at *5 (E.D. La. Dec. 10, 2013).  Therefore, to obtain federal relief, petitioner must show that the state court's decision denying this claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  For the following reasons, it is clear that he has not made that showing.

It is true that due process may be violated if a prosecutor knowingly uses false testimony at trial or allows untrue testimony to go uncorrected.  Giglio v. United States, 405 U.S. 150, 153 (1972); Napue v. Illinois, 360 U.S. 264, 269 (1959); Faulder v. Johnson, 81 F.3d 515, 519 (5th Cir. 1996).  However, to obtain relief with respect to such a claim, a petitioner must show that (1) the testimony in question was actually false, (2) the prosecutor knew it was false, and (3) the testimony was material.  Duncan v. Cockrell, 70 Fed. App'x 741, 744 (5th Cir. 2003).  "Evidence is 'false' if, *inter alia*, it is specific misleading evidence important to the prosecution's case in chief. False evidence is 'material' only if there is any reasonable likelihood that it could have affected the jury's verdict."  Id.

In the instant case, petitioner alleges that, contrary to the victim's testimony, she and petitioner were involved in a sexual relationship.  He further alleges that Christine Porterie informed the prosecutor of that relationship.  However, even if the Court were to entertain the questionable assumption that there was any reason the prosecutor would find Porterie, petitioner's former girlfriend, more credible than the victim, petitioner has presented no evidence whatsoever, such as an affidavit from Porterie, proving that Porterie ever in fact discussed this issue with the

prosecutor.[20] Without such evidence, petitioner has clearly failed to meet his burden of proof, and so there is absolutely no basis for finding that the state court's decision denying this claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Accordingly, the AEDPA requires that this federal court likewise deny the claim.

With respect to the claim that the prosecutor improperly withheld evidence from the defense, the Louisiana First Circuit Court of Appeal rejected that claim on direct appeal, holding:

> The defendant also contends that the state violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in failing to provide the defense with copies of telephone records that were subpoenaed and received from AT&T.  The defendant argues that he was prejudiced because he could have used these records to show that he and the victim exchanged numerous telephone calls on the night she was attacked.  He further alleges that, during these calls, he heard the victim arguing and wrestling over the phone with her ex-husband.  At trial, the defendant presented as a hypothesis of innocence that Ms. Mayeaux's ex-husband was the person who attacked and beat her, supposedly because he was jealous and upset about her romantic relationship with a black man.
>
> The record indicates that when defense counsel asserted that the state had not provided the telephone records, the prosecutor responded that "[t]hat's something the police used," but that the state

---

[20] The Court notes that petitioner requested that this Court obtain Porterie's telephone records.  However, that request was denied because this Court would be unable to consider that evidence due to the fact that it was never presented to the state courts.  Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011) ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.  Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that 'resulted in' a decision that was contrary to, or 'involved' an unreasonable application of, established law.  This backward-looking language requires an examination of the state-court decision at the time it was made.  It follows that the record under review is limited to the record in existence at that same time *i.e.*, the record before the state court.").  Moreover, at best, those telephone records would prove only that a telephone conversation occurred, not the substance of the conversation.

possessed no such records.[FN7]  The defendant contends in brief that the prosecutor's statement was false, because "there is a statement in the partial discovery that the defense did receive acknowledging that the AT&T Phone Records were received on December 3, 2009, and over 30 of those numbers were contacted on December 4, 2009."

> [FN7] The prosecutor did not elaborate on her remark. However, we note that Detective Chaisson testified that during the search for the defendant, the police monitored his cellular phone in an attempt to locate him.

> The defendant's contentions lack merit.  Defense counsel did not challenge the prosecutor's statement on the grounds that it was inconsistent with the prior discovery received by the defense.  The only "phone records" mentioned in discovery that appear in the record involve "pinging" the defendant's phone to locate it.  There is nothing in the record that indicates information was obtained by the state concerning the number and duration of calls.
> Moreover, the telephone records would not have been of the favorable probative value claimed by the defendant.  Ms. Mayeaux acknowledged at trial that she received more than one telephone call from the defendant on the night in question.  Further, contrary to the defendant's contentions, even if the records did prove the exact number of telephone calls made and their duration, this fact would be of little or no probative value in establishing that Ms. Mayeaux's ex-husband was present and arguing with her during the telephone calls, particularly since she specifically denied those allegations at trial.  This assignment of error lacks merit.[21]

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[22]

The AEDPA places severe limitations on this Court's review of that state court decision.  The United States Fifth Circuit Court of Appeals has cautioned:

---

[21] Bolton, 2011 WL 4448170, at *12; State Rec., Vol. IV of VI.

[22] State v. Bolton, 80 So.3d 470 (La. 2012) (No. 2011-KO-2061); State Rec., Vol. IV of VI.

> Under AEDPA, [a federal court] do[es] not decide *de novo* whether a state prisoner has sufficiently proven a <u>Brady</u> violation. <u>See Yarborough v. Alvarado</u>, 541 U.S. 652, 665, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("We cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct as a de novo matter."); <u>Neal v. Puckett</u>, 286 F.3d 230, 236 (5th Cir. 2002) (en banc) ("We have no authority to grant habeas corpus relief simply because we conclude, in our independent judgment, that a state supreme court's application of [federal law] is erroneous or incorrect."). Rather, [a federal court] decide[s] whether the state court's <u>Brady</u> determination resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established federal law. <u>Busby v. Dretke</u>, 359 F.3d 708, 717 (5th Cir. 2004).

<u>Dickson v. Quarterman</u>, 462 F.3d 470, 477-78 (5th Cir. 2006). For the following reasons, it is evident that the state courts in fact properly denied this claim.

With respect to claims that the prosecution withheld evidence in violation of <u>Brady</u> and its progeny, the United States Supreme Court has held:

> A <u>Brady</u> violation occurs when the government fails to disclose evidence materially favorable to the accused. This Court has held that the <u>Brady</u> duty extends to impeachment evidence as well as exculpatory evidence, and <u>Brady</u> suppression occurs when the government fails to turn over even evidence that is known only to police investigators and not to the prosecutor.

<u>Youngblood v. West Virginia</u>, 547 U.S. 867, 869-70 (2006) (internal citations and quotation marks omitted). Therefore, to prevail on a <u>Brady</u> claim, a petitioner "must show that (1) the state withheld evidence, (2) the evidence was favorable to the accused, and (3) the evidence is material to guilt or punishment." <u>DiLosa v. Cain</u>, 279 F.3d 259, 262-63 (5th Cir. 2002).

Here, petitioner's claim fails on the first prong of that analysis. Apparently, the records to which petitioner is referring are his own cellular telephone records listing the calls to

and/or from his telephone on the date of the attack.  However, as the state courts noted, he has offered no proof that the state ever obtained, much less withheld, those records.  The only telephone records referenced in the state court record appear to be the ones relating to the "pings" used to determine the location of the telephone, not the call records.  Moreover, even if the state did obtain petitioner's cellular telephone records concerning his call history, it is unclear why petitioner could not have likewise obtained his own records directly from AT&T.  The prosecution is not obligated to produce materials which the defense could have obtained on its own simply by exercising reasonable diligence.  Rector v. Johnson, 120 F.3d 551, 558-59 (5th Cir. 1997); Kutzner v. Cockrell, 303 F.3d 333, 336 (5th Cir. 2002).

Further, in any event, petitioner's claim also fails on the "materiality" prong of the analysis.  While the telephone records at issue might have been helpful to the defense, that is not the applicable standard.  See, e.g., Kyles v. Whitley, 514 U.S. 419, 436-37 (1995) ("[T]he Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense.").  Rather, as noted, a Brady violation occurs only when the withheld evidence was "material" in the constitutional sense.  On that point, the United States Supreme Court has held:

> Such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different, although a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal.  The reversal of a conviction is required upon a showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

- 25 -

Youngblood, 547 U.S. at 870 (internal citations and quotation marks omitted).  Because there is no dispute that there were telephone conversations between the victim and petitioner on the night of the attack, and because the records would not reveal the substance of those conversations, the telephone records simply were not "material" in the constitutional sense.

### D.  Ineffective Assistance of Counsel

Lastly, petitioner claims that he received ineffective assistance of counsel both at trial and on appeal.  The United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 697 (1984).  A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.

"[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

The appropriate standard for determining prejudice varies slightly depending on whether a petitioner is challenging the actions of trial or appellate counsel.  In order to prove prejudice with respect to *trial* counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.  On the other hand, to prove prejudice with respect to a claim that *appellate* counsel was ineffective, a petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation.  Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins, 528 U.S. 259, 286 (2000).  Therefore, a petitioner must demonstrate a reasonable probability that, if appellate counsel's performance had not been deficient in the manner claimed, the appellate court would have vacated or reversed the trial court judgment based on the alleged error.  Briseno, 274 F.3d at 210.

Petitioner's ineffective assistance of counsel claims were rejected by the state courts in the post-conviction proceedings. Because such a claim is a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Moreover, the United States Supreme Court recently explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 131 S.Ct. 770, 785-86 (2011) (citation omitted).  The Supreme Court then explained:

> Surmounting <u>Strickland</u>'s high bar is never an easy task.  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.  The question is whether an attorney's representation amounted to incompetence under prevailing professional norms,  not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult.  *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.*  The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).  *When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

<u>Id</u>. at 788 (citations omitted; emphasis added).  For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claims.

Petitioner provides a laundry list of ways in which his trial counsel was allegedly ineffective.  This Court has attempted to decipher this list and will attempt address each allegation in turn.

Petitioner first alleges that "defense counsel admitted he did nothing."[23]  As the state court noted in denying that claim, petitioner misrepresents counsel's "admission":

> The Petitioner claims that ... [h]is counsel admitted he did nothing.  Petitioner has taken a phrase out of context and twisted its meaning.  He has misstated a discussion during the trial regarding subpoenaed information which he requested.  In this discussion the trial court asked Petitioner's counsel whether he attempted to obtain the information he subpoenaed personally.  Petitioner's counsel stated that he subpoenaed the information, but he did nothing personally to request the information sought.  The statement that the Petitioner's attorney said that he "did nothing" is not true, and this claim is meritless.[24]

However, the closer question, which petitioner also poses in his application, is whether the comment when taken *in context* is indicative of ineffective assistance.  The context is fairly simple.  On May 6, 2010, petitioner, acting *pro se*, requested that the court issue several subpoenas to obtain evidence which he believed would establish that he and the victim were involved in a sexual relationship, a relationship that the victim denied.  Because the subpoenas were not in fact issued until June 14, 2010, not all of the evidence sought had been produced by date of trial, June 21, 2010, and counsel therefore requested a continuance.  In considering that request, the judge asked defense counsel what efforts he had made with respect to the subpoenas and the evidence.  Counsel admitted that he had not followed up on the subpoenas, explaining that he assumed that they would have issued in a timely fashion and "we wouldn't have trouble getting the information."  When asked if he made any independent efforts to obtain the evidence without the

---

[23] Rec. Doc. 1, p. 43.

[24] State Rec., Vol. IV of VI, Judgment dated July 25, 2012, at p. 5.

subpoenas, defense counsel admitted that he had not, explaining that he assumed that the evidence would be produced as a result of the subpoenas.[25]  Clearly, in hindsight, defense counsel should not have made those assumptions.

Nevertheless, even if counsel's failure to follow-up on the subpoenas or to obtain the evidence in another way constituted deficient performance, that alone is insufficient to warrant relief.  Rather, petitioner must also show that actual prejudice resulted.  For the following reasons, he simply has not made that showing.

As noted previously in this opinion, petitioner requested five subpoenas. Ultimately, however, much of the evidence he sought was either otherwise procured or unnecessary.  He requested registration records from a Best Western hotel in Lake Charles, and those records were in fact produced and introduced at trial.  He requested a copy of a change of address card he filed with the United States Postal Service to prove that he had at one point changed his address to the victim's residence; however, those records were unnecessary because the victim was willing to concede that she allowed petitioner to use her mailing address for a period of time.[26]  He requested records from the Brouillette Water Works to prove that he had an account for water service and therefore was not homeless as the victim alleged; however, defense counsel apparently had those or similar records in his possession at trial because he offered to show them to the victim.[27]

---

[25] State Rec., Vol. I of VI, trial transcript, pp. 200-01.

[26] State Rec., Vol. I of VI, trial transcript, pp. 210-11.

[27] State Rec., Vol. III of VI, trial transcript, p. 583.

A fourth subpoena was issued for employment records from Offshore Services of Acadiana. Petitioner alleges that those records were necessary to prove that he was not unemployed as the victim had alleged. However, the fact that petitioner at some points worked offshore was not in dispute; the victim testified to that fact.[28] Moreover, even if the Court assumes that petitioner is alleging that he worked offshore at a particular point in time relevant to this case, he still has offered nothing other than his rank allegations in support of this claim. Clearly, even if the records were not obtained prior to trial, he could have thereafter obtained his employment records for use in the state post-conviction proceedings. He did not do so, and in fact he has never produced any such records or shown that they in any way contradicted the victim's testimony. As a result, he has not met his burden of proof to establish that he was actually prejudiced by counsel's failure to obtain the records.

The final subpoena was issued for registration records from a Holiday Inn in Baton Rouge, which petitioner contends could have been used impeach the victim's testimony denying that she and petitioner were romantically involved. Again, petitioner has never produced those records or demonstrated that they in fact could have been used to impeach the victim. The closest he has come is to produce a letter from Kristy Massey, the hotel's Director of Operations. That letter states that the hotel could not comply with petitioner's request to produce a registration card signed by him because no such card existed. Ms. Massey concluded: "The only documentation that we have with an Eric Bolton is an added profile to accompany a reservation under Louise Mayeux [sic]. I can not release any documentation signed by her without her express written permission."[29] Admittedly, that

---

[28] State Rec., Vol. III of VI, trial transcript, pp. 545, 549-50 and 585.

[29] Rec. Doc. 1, p. 88.

letter is *some* evidence in support of petitioner's allegations, although it is neither as conclusive as he suggests nor proof that he and the victim were in fact romantically involved. Without more, that letter alone simply is not a sufficient basis for this Court to conclude that petitioner was actually prejudiced by counsel's failure to obtain the records, especially in light of the victim's compelling testimony identifying him as the perpetrator and, even more importantly, the stringently deferential standard of review under which this Court must consider this claim.

In a related claim, petitioner also argues that his counsel should have ensured that the subpoenas were not defective. However, again, even if it is assumed that counsel performed deficiently with respect to the subpoenas, petitioner still has not proved that he was actually prejudiced by any defects in the subpoenas. Specifically, he has never met his burden to show that the subpoenas, even if issued correctly in every respect, would have resulted in additional relevant, admissible evidence beneficial to the defense. Without such a showing, his claim is purely speculative, and "[a]n ineffective assistance of counsel claim based on speculation or conclusional rhetoric will not warrant habeas relief." Darby v. Johnson, No. 97-11403, 1999 WL 153045, at *2 (5th Cir. Mar. 9, 1999).

Petitioner also faults his counsel for not adequately investigating the case or hiring a private investigator to do so. For example, he faults counsel for failing to visit the crime scene, to obtain surveillance video from a restaurant parking lot, to interview people who might have seen petitioner and the victim show affection in public, to interview neighbors concerning what they observed on the night of crime, to interview victim's husband as to his whereabouts at the time of the attack, and to check if there were any records of domestic disputes involving the victim.

However, to prevail on a claim of inadequate investigation, a petitioner must point to evidence in the record demonstrating that further investigation would in fact have revealed additional information beneficial to the defense.  See Moawad v. Johnson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008).  Here, petitioner has not shown that further investigation would have revealed any such beneficial information; rather, again, his assertions are entirely speculative.   Accordingly, his claims necessarily fail because he has simply not shown that he was prejudiced by the allegedly inadequate investigation.  See Thomas v. Cain, Civ. Action No. 09-4425, 2009 WL 4799203, at *9 (E.D. La. Dec. 9, 2009).

In a related claim, petitioner argues that his counsel was ineffective for failing to subpoena potential lay witnesses who could have supported his version of the events and the intimate nature of his relationship with the victim, as well as an expert witness who could have refuted the testimony of Dr. Greg Benton, an expert who testified on behalf of the state.  However, as the United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain.  For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable

> to a particular defense.  This requirement applies to both uncalled lay
> and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted); see also Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

Here, petitioner presented no evidence in the state post-conviction proceedings, such as affidavits from uncalled witnesses, lay or expert, demonstrating that they would have testified in a manner beneficial to the defense.  Therefore, he clearly failed met his burden with respect to this claim.  See, e.g., United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); Buniff v. Cain, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); Combs v. United States, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); Harris v. Director, TDCJ-CID, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009)

("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal

to the claim of ineffective assistance.").[30]

Petitioner next claims that his counsel was ineffective for failing to object to a

comment by the prosecutor during *voir dire* which petitioner argues was an impermissible reference

to his failure to testify.  In context, the prosecutor's comment was as follows:

> Now, I always talk about that reasonable doubt, we talk about
> I have to prove the elements.  Well, if the defendant doesn't take the
> stand, doesn't call any witnesses, you can't hold that against him.  So
> this is what I like to talk about a lot, what I mean about that is, if I
> prove my case to you, all of the elements, beyond a reasonable doubt
> and there was nothing else but what I put on, you can convict him.
>
> Now, are you convicting him because they wouldn't testify?
> Now, take that situation where you're questioning whether or not I've
> proved serious bodily injury.  You say, "Well, he didn't testify, and
> nobody else did, so I'm going to fill it in for him."  You can't do that.
> All right?  That's holding it against him.  We can't use him to fill in
> what I didn't do.
>
> Now, if he calls witnesses, or testifies himself, anything that's
> brought out before you can be used to render your verdict also, to put
> it all together.  Does that make sense?  Does everyone follow what
> we were talking about there?  Okay.  Promise me, they won't give
> me, I don't need extra help.  Even if you think I do, don't give it to
> me.  Okay.[31]

Considered in context, it is clear that the prosecutor's comments were proper.  In fact,

far from making an impermissible reference to a failure to testify, she went out of her way to explain

that no inference could be drawn from petitioner's failure to testify or to put on evidence because

---

[30] Petitioner attempted to correct that defect in part by providing this federal court with affidavits from Wilbert Barnes and Shondra Gutter.  However, as previously noted, this Court is unable to consider evidence that was not presented to the state courts.  <u>Cullen v. Pinholster</u>, 131 S.Ct. 1388, 1398 (2011).  <u>See</u> *supra* note 20.

[31] State Rec., Vol. II of VI, trial transcript, pp. 269-70.

the burden of proof was entirely on her.  Because those comments were proper, there was no basis for objecting to them.  Therefore, defense counsel's failure to object did not constitute deficient performance and no prejudice resulted.  See, e.g., Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); see also United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

Petitioner next claims that counsel was ineffective for failing to file a timely motion for a continuance.  He argues that counsel's motion was filed only six days prior to trial rather than seven days as required by article 707 of the Louisiana Code of Criminal Procedure.  However, the motion for a continuance was denied on the merits, not because it was untimely.[32]  Accordingly, petitioner cannot show that he was prejudiced by counsel's failure to comply with article 707.

Petitioner next complains that his counsel was ineffective for failing to file an immediate writ with the intermediate appellate court challenging the denial for a continuance. However, as noted previously, when petitioner later argued on direct appeal that the trial court erred in denying the motion for a continuance, that claim was denied by both the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court.  There is absolutely no reason whatsoever to conclude that those courts would have reached a contrary decision if the claim had been asserted in a pretrial writ rather than on direct appeal.  Accordingly, he has not shown that he was prejudiced by counsel's failure to file such a writ.

_____

[32] State Rec., Vol. I of VI, trial transcript, pp. 196-215.

Petitioner also claims that counsel was ineffective for failing to request a jury instruction on simple battery or aggravated battery. The state district court denied that claim, holding:

> Petitioner claims that his counsel was also ineffective for failing to request special jury instructions. Review of the record shows that the jury was correctly instructed. There was no instruction which the petitioner's attorney could have added to those instructions. The original verdict form submitted was the first draft and was subsequently replaced with a revised and correct verdict form. Ultimately the jury was correctly instructed and this claim is also without merit.[33]

Without additional reasons being assigned, petitioner's claim was likewise denied by the Louisiana First Circuit Court of Appeal[34] and by the Louisiana Supreme Court.[35]

That ruling is obviously correct. A jury charge regarding simple battery would have been inappropriate because simple battery is not a responsive verdict to a charge of attempted second degree murder. La. Code Crim. P. art. 814(A)(4). Further, although aggravated battery is a responsive verdict to that charge, it was excluded in this case. Under Louisiana law, "[a]ggravated battery is a battery committed with *a dangerous weapon*." La. Rev. Stat. Ann. § 14:34(A). Because no "dangerous weapon" was used here,[36] the trial court properly excluded aggravated battery as a

---

[33] State Rec., Vol. IV of VI, Judgment dated July 25, 2012, at p. 7.

[34] State v. Bolton, No. 2012 KW 1433 (La. App. 1st Cir. Nov. 21, 2012); State Rec., Vol. IV of VI.

[35] State *ex rel.* Bolton v. State, 113 So.3d 211 (La. 2013) (No. 2012-KH-2606); State Rec., Vol. IV of VI.

[36] State Rec., Vol. III of VI, trial transcript, pp. 625-28. The trial court noted that petitioner used only his fists in the assault and that bare hands are not considered dangerous weapons under Louisiana law. La. Rev. Stat. Ann. § 14:2(A)(3); State v. Calvin, 209 La. 257, 265, 24 So.2d 467, 469 (1945).

responsive verdict.  La. Code Crim. P. art. 814(C) ("Upon motion of the state or the defendant, or

on its own motion, the court shall exclude a responsive verdict listed in Paragraph A if, after all the

evidence has been submitted, the evidence, viewed in a light most favorable to the state, is not

sufficient reasonably to permit a finding of guilty of the responsive offense.").  Therefore, counsel

was not deficient for failing to requesting jury instructions on simple battery or aggravated battery,

and petitioner was not prejudiced.

　　　　　Petitioner also contends that his counsel was ineffective for failing to request a

Daubert hearing[37] or DNA testing.  The state district court denied that claim, holding:

> The Daubert hearing pertains to testimony taken from Dr. Benton
> regarding his expert testimony as to the victim's injuries.  This court
> takes judicial notice of the fact that Dr. Benton testifies regularly as
> an expert witness.  Therefore, no Daubert hearing was required.
> Furthermore, Dr. Benton's testimony did not refer to any novel
> scientific or medical concepts.

---

[37] See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).  In an effort to prevent jurors from hearing expert opinions based on untested theories or invalid methods, the United States Supreme Court held in Daubert that, before a party can present expert testimony based on "scientific knowledge," the witness must demonstrate to the trial court, in its capacity as "gatekeeper," that the proposed expert testimony is based on "good" science and, therefore, sufficiently reliable.  Of course, it must be remembered:

> Daubert is an exegesis of Rule 702 of the Federal Rules of Civil
> Procedure and governs the admission of expert evidence in federal
> trials only.  Daubert does not bind the states, which are free to
> formulate their own rules of evidence subject only to the limits
> imposed by the Constitution.

Kinder v. Bowersox, 272 F.3d 532, 545 n.9 (8th Cir. 2001); see also Norris v. Schotten, 146 F.3d 314, 335 (6th Cir. 1998).  However, the Louisiana Supreme Court has found Daubert persuasive and, as a matter of state law, has similarly adopted a "requirement that expert scientific testimony must rise to a threshold level of reliability in order to be admissible under La.C.E. art. 702." State v. Foret, 628 So.2d 1116, 1123 (La. 1993).

Review of the record shows that counsel for the Petitioner did inquire as to DNA testing of evidence obtained. The prosecutor stated that there was no DNA evidence obtained. Now Petitioner claims that DNA testing on the clothing he wore on the day the victim was beaten would have exonerated him. This is nonsense. Had petitioner's counsel requested DNA testing of Petitioner's clothing and found no victim DNA that would have proved nothing conclusive.

Petitioner asserts here what I call the "CSI defense." Owing to a plethora of forensic evidence television shows in the CSI: Miami genre, many lay people believe that DNA evidence is easily obtainable and, therefore, its presence or absence is conclusive proof that someone was or was not at the scene of the crime. So problematic is such a notion in the minds of the triers of fact, I have observed prosecutors in some cases spend up to two hours with an expert scientist on the stand to explain why DNA evidence was not obtainable for testing. In this case there was sufficient other evidence to put Petitioner at the scene of the crime.

During the trial the prosecutor presented plenty of witnesses and evidence which would place the Petitioner in the victim's house on the date the crime occurred. It was also possible that counsel would not have wanted the Petitioner's clothing tested in case that testing implicated him even more. There is no discussion in the record of blood on the Petitioner's clothes to test DNA. Petitioner has again failed to demonstrate this his counsel's strategy violated any constitutional rights or prejudiced him in some way. Since DNA testing would not have clearly exonerated the Petitioner and he cannot prove that the outcome of the trial would be different, this claim is also meritless.[38]

Without additional reasons being assigned, petitioner's claim was likewise denied by the Louisiana First Circuit Court of Appeal[39] and by the Louisiana Supreme Court.[40]

[38] State Rec., Vol. IV of VI, Judgment dated July 25, 2012, at p. 6.

[39] State v. Bolton, No. 2012 KW 1433 (La. App. 1st Cir. Nov. 21, 2012); State Rec., Vol. IV of VI.

[40] State ex rel. Bolton v. State, 113 So.3d 211 (La. 2013) (No. 2012-KH-2606); State Rec., Vol. IV of VI.

For the reasons noted by the state court, counsel had no colorable basis for requesting a <u>Daubert</u> hearing. Counsel therefore cannot be considered ineffective for failing to file a meritless motion requesting one. <u>See, e.g.</u>, <u>Murray v. Maggio</u>, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not required to engage in the filing of futile motions. The filing of pretrial motions falls squarely within the ambit of trial strategy."); <u>Lavernia v. Lynaugh</u>, 845 F.2d 493, 499 (5th Cir. 1988) (Counsel cannot be faulted for failing to pursue meritless motions."); <u>Lindsey v. Travis</u>, Civ. Action No. 06-7852, 2007 WL 1237919, at *8 (E.D. La. Apr. 25, 2007) ("[P]etitioner has made no showing whatsoever that any meritorious pretrial motions were abandoned or left unfiled.... He simply has not shown that counsel's failure to pursue pretrial motions constituted deficient performance in any way, much less that prejudice resulted.").

As to petitioner's claim that counsel was ineffective for failing to pursue DNA testing, that claim also fails. As an initial matter, it must be remembered that such scientific testing poses a significant danger for defense counsel, in that there is the possibility that it could confirm his client's involvement beyond a reasonable doubt. Therefore, *habeas* courts are loath to secondguess counsel's decision not to pursue scientific testing. <u>See, e.g.</u>, <u>Skinner v. Quarterman</u>, 528 F.3d 336, 341-42 (5th Cir. 2008); <u>Stoves v. LeBlanc</u>, Civ. Action No. 04-2037, 2010 WL 3523012, at *5 (E.D. La. Apr. 19, 2010), <u>adopted</u>, 2010 WL 3522957 (E.D. La. Sept. 1, 2010); <u>Davis v. Cain</u>, Civ. Action No. 07-6389, 2008 WL 5191912, at *8 (E.D. La. Dec. 11, 2008). Moreover, in any event, petitioner's claim also fails simply because he has not met his burden to show "what results the scientific tests would have yielded" and that those results would in fact have been favorable to him. Without those showings, he cannot prove that he was prejudiced by counsel's failure to have such

tests performed.  See Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002); Johnson v. Cain, Civ. Action No. 08-4208, 2009 WL 2366385, at *9 (E.D. La. July 29, 2009); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *8 (E.D. La. Dec. 11, 2008).

Petitioner also contends that counsel should have objected to the prosecutor introducing petitioner's clothes into evidence and publishing them to the jury.  However, the clothes were properly identified[41] and admissible.  Petitioner has failed to identify any viable objection that could have been made with respect to the clothes.  Therefore, again, he has shown neither deficient performance nor prejudice resulting from the failure to object.

Lastly, petitioner contends that his appellate counsel was ineffective for failing to pursue a Batson challenge.  However, it must be remembered that appellate counsel "is not obligated to urge on appeal every nonfrivolous issue that might be raised (not even those requested by defendant)."  West v. Johnson, 92 F.3d 1385, 1396 (5th Cir. 1996).  On the contrary, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."  Jones v. Barnes, 463 U.S. 745, 751-52 (1983).  Far from evidencing ineffectiveness, an appellate counsel's restraint often benefits his client because "a brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions."  Id. at 753.  Rather, to prevail with respect to such a claim, petitioner must establish that the ignored issues were "clearly stronger" than the issues actually presented on appeal.  See, e.g., Diaz v.

---

[41] State Rec., Vol. III of VI, trial transcript, at pp. 510-11.

Quarterman, 228 Fed. App'x 417, 427 (5th Cir. 2007); see also Smith v. Robbins, 528 U.S. 259, 288 (2000).

In the instant case, appellate counsel claimed that the evidence was insufficient to support the second degree kidnapping conviction because the state failed to prove the essential element that the victim was physically injured either during or as a result of being imprisoned by the defendant.  While that claim was not a strong one, petitioner has not shown that a Batson claim would have been any stronger.  On the contrary, the trial record does not reflect that a Batson challenge was even made.  In fact, when petitioner asserted a *pro se* claim on appeal challenging the adequacy of the record in this regard, the Louisiana First Circuit Court of Appeal:

> With regard to the defendant's ... allegations as to missing portions of the record, we note that he previously raised the same complaints regarding an alleged Batson challenge and unspecified objections in a pro se motion to supplement the record filed in this appeal.   A different panel of this Court denied the motion to supplement.   See State v. Bolton, 2011-0329 (La.App. 1st Cir. 6/7/11) (unpublished).  Based on our review of the record, we agree with the prior ruling.  The defendant provided no specific information concerning what the alleged Articles 404 and 405 objections related to or when they were made.  He failed to even identify the witness or witnesses whose testimony allegedly led to the objections or to describe the circumstances during which they purportedly were made.
> Similarly, regarding the claim that there was a Batson objection made at a bench conference that is not included in the transcript, the defendant does not identify the prospective jurors who were allegedly stricken improperly or specify when the objection was made.  Additionally, the transcript contains two bench conferences wherein the entire jury was selected and the trial court requested that the state and defense counsel state any peremptory challenges or challenges for cause.  Defense counsel did not object to any of the state's peremptory challenges or mention a previously raised Batson claim during either of those two conferences.  The minutes also do not indicate that a Batson objection was made.  Accordingly, the record fails to support the defendant's claim that the court reporter

omitted a <u>Batson</u> challenge and related bench conference from the transcript.[42]

In that there was no record of a <u>Batson</u> challenge, it is difficult to see how appellate counsel could have raised a viable <u>Batson</u> claim on appeal.  Nevertheless, in any event, even if this Court were to assume that a <u>Batson</u> challenge was made, that all references to that challenge were somehow omitted from the trial court record, and that appellate counsel nevertheless could have properly asserted such a claim, that would not suffice for petitioner to prevail on this ineffective assistance claim.  Rather, again, he must show that the <u>Batson</u> claim that would have been stronger than the claim actually asserted and that there is a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation.  Because petitioner has failed even to identify the basis of the purported <u>Batson</u> challenge, much less show that it had any merit whatsoever, he obviously has not made the showing necessary to warrant relief.

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petitioner's motion for summary judgment, Rec. Doc. 11, be **DENIED**.[43]

It is **FURTHER RECOMMENDED** that petitioner's federal application for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

---

[42] <u>Bolton</u>, 2011 WL 4448170, at pp. 14-15; State Rec., Vol. IV of VI.

[43] Petitioner argued that he was entitled to summary judgment because the state failed to respond to his federal application in a timely fashion.  It suffices to note that petitioner's underlying factual contention is false, in that the state filed a timely response in this proceeding.  The Court had granted the state an extension of time to respond.  Rec. Doc. 9.  The state filed its response by the deadline set by the Court.  Rec. Docs. 13 and 14.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[44]

New Orleans, Louisiana, this seventeenth day of January, 2014.


**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[44] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.